# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-2871 |
| OURHOUSEWORKS, LLC | : | |
| ENVIROX, LLC and | : | |
| JOHN DOES 1 - 10, | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                             October 27, 2014

A non-jury trial was held in the above case in which the plaintiff QVC, Inc. (QVC) alleged that the defendant EnvirOx, LLC (EnvirOx) was the alter ego of the defendant OurHouseWorks, LLC (OHW), and was therefore responsible for damages arising out of the breach of contract between QVC and OHW, which arose as a result of OHW's failure to meet QVC's quality assurance standards in violation of certain terms and conditions of the various purchase orders entered into between QVC and OHW.

Although EnvirOx disputes the alter ego theory of QVC, it is clear to me that EnvirOx was the alter ego of OHW.[1]

---

1. The findings of breach of the terms of the purchase orders and that EnvirOx was the alter ego of OHW are based upon the Amended Proposed Findings of Fact and Conclusions of Law of Plaintiff, QVC, Inc. The court adopts as facts by reference thereto the following numbers: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, and 87.

What EnvirOx also disputes is whether the observance of the fiction of the separate existence of EnvirOx and OHW would under the circumstances sanction a fraud or promote an injustice.

EnvirOx argues correctly that there is no fraud in this case and neither OHW nor EnvirOx promoted any injustice upon QVC. In support of this argument, defendants submitted proposed findings of fact, from which the court has adopted the following:

40. QVC issued the following purchase 0rders to OHW (the "Purchase Orders") for products that were received by QVC:

| P.O. # | Issued | Quant. Rec'd | Product |
|--------|--------|--------------|---------|
| 566125 | 01/18/08 | 10,000 units | OHW home concentrate refill kit, QVC Item# V26984 |
| 562821 | 01/30/08 | 44,000 units | OHW 13 piece cleaning kit, QVC Item# V26984 |
| 568970 | 02/08/08 | 4,350 units | OHW home shiny surf sanitize, QVC Item# V27088 |
| 568972 | 02/08/08 | 4,349 units | OHW home carpet spotter & oder, QVC Item# V27088 |

41. The Purchase Orders specifically identified OHW as the vendor and QVC's contracting party.

42. QVC failed to undertake any due diligence investigation of either OHW or EnvirOx, never requested any financial information about either company, and never sought any guarantees for the performance of the contract by OHW.

43. No evidence was adduced at trial claiming: that OHW was undercapitalized, that it had non-functioning officers, that it did not keep the records Illinois law requires be kept by

limited liability companies, or that it commingled funds for which there was not a proper accounting.

45. At no time before the filing of litigation did QVC ever make a demand for payment under its contract with OHW to EnvirOx, or claim that it was entitled to do so.

46. Following the economic failure of the contract between QVC and OHW, QVC sent a demand letter issued and signed by QVC's inside counsel on December 14, 2011 (the "QVC Demand Letter"). The QVC Demand Letter was addressed solely to OHW, identified OHW as QVC's vendor and contracting party, and made demand solely upon OHW for the contract damages QVC asserts in this case. No such demand, either written or oral, and no claim of entitlement to recover from EnvirOx under the QVC-OHW Contract, either written or oral, ever was made by QVC to EnvirOx.

50. At the time that QVC and OHW negotiated and finalized their contract, QVC had full opportunity to inquire into the legal and business relationship between OHW and EnvirOx, to request a balance sheet and financial statements from OHW, to investigate OHW's business history, marketing and sales, to determine the assets held by OHW, to discover the sources of its revenues and funds, and to seek financial guarantees from EnvirOx or other third party, or any other financial or business-related information. Nonetheless, as shown by the evidence, QVC did not inquire as to any of these matters and undertook no due diligence whatever.

51. In the discussions between QVC on the one hand, and OHW and EnvirOx on the other, it was clearly understood and discussed that OHW was to be the contracting party, that OHW, lacking production facilities, would continue its practice of having its products supplied by EnvirOx, and that EnvirOx would not be a contracting party.

52.    The contract documents consisted of the four Purchase Orders and identical terms and conditions attached to each, all of which documents were prepared by QVC. Paragraph 19 of the terms and conditions is a contract integration clause. In relevant part, it provided that the contract documents "constitute the full understanding of the parties hereto and a complete and exclusive statement of the terms of the parties' agreement concerning the Merchandise furnished hereunder." Thus, QVC itself insisted that any prior discussions – including those with EnvirOx - not be deemed within the purview of the QVC-OHW contract.

54.    The damages claimed by QVC arose solely out of the QVC-OHW contract. QVC made no claims of fraud, fraud in the inducement, or misrepresentation, and there were no damages alleged that arose outside of the contract.

An Illinois appellate court case, Buckley v. Abuzir, 8 N.E. 3d 1166, 1170-1171 (Ill. App. Ct. 2014) put the quandary faced in deciding this case into the proper perspective when it stated:

> Assuming without deciding that plaintiff has established questions of material fact on the unity of interest and ownership prong of the veil-piercing test, the court nevertheless concludes that plaintiff has failed to provide evidence that would satisfy the second prong of the test, that is, a showing that failure to pierce the corporate veil would sanction a fraud or promote injustice. This *second prong "requires something less than an affirmative showing of fraud, but something more than the mere prospect of an unsatisfied judgment."* Wachovia Sec., LLC v. Banco Panamericano, Inc., 674 F.3d 743, 756 (7th Cir. 2012) (quotation marks omitted); see also Sea-Land Servs., Inc. v. Pepper Source, 941 519, 522-23 (7th Cir. 1991) ("The prospect of an unsatisfied judgment looms in every veil-piercing action; why else would a plaintiff bring such an action?  Thus, if an unsatisfied judgment is enough for the 'promote injustice' feature of the test, then every plaintiff will pass on that score, and [the test] collapses into a one-step ... test.  We cannot abide such a result.")  *Instead, a plaintiff must show that "a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful."* Pepper Source, 941 F.2d at 524.

In the final analysis, all plaintiff has shown here is the prospect of an unsatisfied judgment.

The only possible argument plaintiff has is unjust enrichment.  Defendant argues that unjust enrichment is not applicable where, as in this case, there is no claim of fraud and the relationship of the parties is founded upon a written contract.  A recent case from this court supports defendant's argument.  *See* Abdul-Rahman v. Chase Home Finance Co., LLC, et al., 2014 WL 3408564 (E.D.Pa.), citing Hershey Foods Corporation v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987).

An order follows.