**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **QVC, INC.,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **OURHOUSEWORKS, LLC,** | **NO.  12-2871** |
| **ENVIROX, LLC, and** | |
| **JOHN DOES 1-10,** | |
| **Defendants.** | |

**DuBois, J.**                                                          **December 29, 2016**

## M E M O R A N D U M

### I.        INTRODUCTION

This case arises out of a breach-of-contract dispute between plaintiff QVC, Inc. ("QVC") and defendant OurHouseWorks, LLC ("OurHouse").  QVC attempts to pierce OurHouse's corporate veil and hold EnvirOx, LLC ("EnvirOx"), OurHouse's parent company, responsible for the resulting damages.  After a non-jury trial, the trial judge determined that EnvirOx and OurHouse operated as one company, but did not reach the issue of whether EnvirOx would be unjustly enriched if the two were treated as separate companies.  That decision was appealed to the United States Court of Appeals for the Third Circuit.  The case was thereafter reassigned to the undersigned judge upon the retirement of the trial judge.

The case was remanded to this Court by the Third Circuit with directions to address the unjust enrichment issue.  This Court concludes that EnvirOx would be unjustly enriched by its relationship with OurHouse and OurHouse's contract with QVC if OurHouse's corporate veil is not pierced.  Based on the following Findings of Fact and Conclusions of Law, judgment is entered in favor of plaintiff, QVC, Inc., and against defendant, EnvirOx, LLC, in the amount of $308,439.38 plus counsel fees.

## II.      PROCEDURAL BACKGROUND

This case is before the Court upon remand from the Third Circuit.  *QVC, Inc. v. OurHouseWorks, LLC*, 649 F. App'x 223, 230 (3d Cir. 2016).  After a non-jury trial, the trial judge determined (1) that OurHouse breached its contract with QVC and (2) that OurHouse functioned as EnvirOx's alter ego.  *QVC, Inc. v. OurHouseWorks, LLC*, No. 12-cv-2871, 2014 WL 5431034 (E.D. Pa. October 27, 2014).  However, the trial judge declined to "pierce the corporate veil" and hold EnvirOx liable for the judgment against OurHouseWorks.  *Id.* at *2-3. The trial judge also ruled in EnvirOx's favor on QVC's standalone unjust enrichment claim.  *Id.* at *2.  QVC appealed the unjust-enrichment and veil-piercing rulings on November 25, 2014.

On May 6, 2016, the Third Circuit upheld the trial judge's ruling that QVC's stand-alone unjust enrichment claim against EnvirOx is barred because it "would allow [QVC] to evade Illinois corporate liability limitations."  *QVC*, 649 F. App'x at 228.  However, as to QVC's corporate veil-piercing claim, the Third Circuit concluded that "it was legal error for the District Court to reject QVC's veil-piercing request on the ground that QVC was legally barred from bringing an independent unjust enrichment claim against EnvirOx."  *Id.* at 229.  The Third Circuit did not disturb the trial judge's conclusion that the relationship between EnvirOx and OurHouse satisfied the first requirement for corporate veil-piercing under Illinois law, specifically that "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist."  *Id.* at 227 (quoting *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) ("*Sea-Land I*").  On remand, this Court is directed "to determine whether EnvirOx was unjustly enriched as a result of EnvirOx's improper manipulation of the corporate form," *QVC*, 649 F. App'x at 230, thereby satisfying the second requirement for corporate veil-piercing.

**III.    FINDINGS OF FACT**

1.      Plaintiff QVC, Inc. is a general merchandise electronic retailer that markets and distributes a wide variety of products directly to consumers.

2.      Defendant EnvirOx, LLC is an Illinois limited liability company formed in September 1999.

3.      Defendant OurHouseWorks, LLC was an Illinois limited liability company that was formed in 2004, ceased business operations in February 2009, and formally dissolved in October 2010.

4.      In 2002, Patrick Stewart (Chief Executive Officer of EnvirOx), Taylor Stewart (Chief Operating Officer and President of EnvirOx), and Diana Stewart (Marketing Director for EnvirOx) decided to create a "consumer division" of EnvirOx, which they named OurHouse.

5.      Although OurHouse was eventually formed as a limited liability company, it was operated as a "division" or "product line" of EnvirOx.

6.      QVC and OurHouse entered into a series of purchase agreements for cleaning kits to be sold by QVC.  QVC made all payments as required under the purchase agreements.

7.      The books and records maintained on behalf of the defendants demonstrate that the assets of OurHouse and EnvirOx were commingled.

8.      EnvirOx's income statements identify OurHouse revenue, including revenue from QVC, as revenue attributable to EnvirOx.

9.      EnvirOx endorsed and deposited the eight checks issued by QVC in the name of OurHouse into EnvirOx's bank account.  EnvirOx did so despite the fact that EnvirOx and OurHouse maintained separate bank accounts.

10. EnvirOx's Chief Financial Officer at the time of trial, Eric Jewsbury, testified as to the possibility of a subsequent transfer of the QVC funds from EnvirOx's bank account to OurHouse's bank account, "I'm not suggesting there was a transfer of money between the two accounts." E. Jewsbury, Trial Tr. Vol. 2, 152: 17-25. He also testified that "[i]t's possible" the transfer of funds never occurred. *Id.*

11. Payments from QVC pursuant to the purchase orders were recorded as EnvirOx revenue and reflected on EnvirOx's income statement.

12. EnvirOx identified QVC as its customer on its internal invoice summary report.

13. EnvirOx's balance sheets identify OurHouse assets as assets of EnvirOx.

14. The "OurHouse operating account" is identified on EnvirOx's bank summary report.

15. In April 2008, the President/Chief Operating Officer of EnvirOx, Taylor Stewart stated:

> We are looking at dissolving OurHouseWorks, LLC and merging all of our Retail activities and resources into EnvirOx, LLC. We've been managing OurHouse as a product line, not a separate company, for a year now . . . and that is what it is—a product line and not a separate company. We are also wanting to shut down the Party Plan part of the business and focus our resources on QVC and traditional retail opportunities. We feel it is time for the business structure to reflect reality!

16. In order to present their products on QVC, defendants were required to complete a Manufacturer Product Demonstration Disclosure Form. The form was completed and signed by Taylor Stewart on behalf of "EnvirOx/OurHouse, LLC."

17. In a document defendants submitted to QVC to substantiate the efficacy claims they intended to make on air, defendants advised QVC that: "OurHouseWorks, LLC is the consumer division of EnvirOx, LLC."

4

18.     Defendants advertised the products debuting on QVC by touting that "OurHouse, the healthy home division of EnvirOx, is now available at www.qvc.com."

19.     In 2008, and pursuant to the terms and conditions of the purchase orders, QVC rejected and returned to defendants certain merchandise.  Under the terms of the purchase orders, QVC was entitled to a refund for the returned merchandise.

20.     In September 2008, OurHouse considered "reworking" the returned product so that it could be sold by QVC.

21.     In a February 2009 email, written during the same month that OurHouse ceased business operations, EnvirOx considered "delaying" the rework of the products due to cost concerns.

22.     Internally, Defendants treated the rework costs as expenses impacting the EnvirOx budget.

23.     EnvirOx, not OurHouse, liquidated the excess inventory that was manufactured for QVC.

## IV.     CONCLUSIONS OF LAW

1.     The Court has jurisdiction based upon diversity of citizenship.  28 U.S.C. § 1332.

2.     The parties agree that the corporate veil piercing issue is governed by Illinois law, and the Third Circuit applied Illinois law in its Opinion, *QVC*, 649 F. App'x at 225.  This Court agrees that the standard for piercing the corporate veil under Illinois law applies to this case as OurHouse and EnvirOx are Illinois companies.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) ("As a general matter, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation."); *see*

*also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 ("A federal court sitting in diversity is required to apply the substantive law of the state whose law governs the action.").

3.      This Court defers to the trial judge's factual findings and legal conclusions, which are not impacted by the Third Circuit's ruling, in accordance with the law of the case doctrine. "The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.  The doctrine applies 'as must to the decisions of a coordinate court in the same case as to a court's own decisions.'"  *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 D.3d 111, 116 (3d Cir. 1997) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *In re Jamuna Real Estate, LLC*, 392 B.R. 149, 169 (Bankr. E.D. Pa. 2008) (noting that law of the case "applies equally to factual findings" as it does conclusions of law).

4.      Piercing the corporate veil is an equitable remedy.  *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009).  Courts applying Illinois law differ on whether the doctrine of piercing the corporate veil applies to Limited Liability Companies (LLCs). *Compare Aqua Thick, Inc. v. Wild Flavors, Inc.*, No. 08-cv-6278, 2009 WL 4544696, at *2 (N.D. Ill. December 1, 2009) (holding that a member or manager of a LLC cannot be held personally liable for debts arising in contract or tort under the revised Illinois Limited Liability Act unless it is (1) provided for in the LLC's articles of organization and (2) the member has consented in writing to be bound by that provision), *with On Command Video v. Roti*, 705 F.3d 267, 269 (7th Cir. 2013) ("Although Markwell Properties is not a corporation, a limited liability company is similar and the parties assume that the same standards for piercing the veil, or at least approximately the same standards, apply to both types of enterprise.").  The Court applies the

corporate veil-piercing analysis to LLCs, consistent with the rulings of the trial judge and the Third Circuit.

5.      Illinois law imposes two requirements to pierce the corporate veil between entities.  First, "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist."  *Sea-Land I*, 941 F.2d at 520.  Second, "circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."  *Id.*

6.      The trial judge previously concluded that the unity of interest and ownership between EnvirOx and OurHouse satisfied the first requirement for corporate veil piercing under Illinois law.  *QVC*, 2014 WL 5431034 at *1.  The trial judge reached this conclusion upon his review of the evidence and his assessment of the credibility of the witnesses.  *See e.g. Hill v. Beyer*, 62 F.3d 474, 482 (3d Cir. 1995) ("Our judicial system affords deference to the finder of fact who hears the live testimony of witnesses because of the opportunity to judge the credibility of those witnesses.").  The Third Circuit found "no grounds to disturb this holding on appeal." *QVC*, 649 F. App'x at 226.  The Court therefore concludes that the relationship between EnvirOx and OurHouse satisfies the first requirement for corporate veil-piercing.

7.      On remand, this Court must determine whether adhering to the fiction of corporate separation "would sanction a fraud or promote injustice," satisfying the second requirement for piercing the corporate veil.  *Sea-Land I*, 941 F.2d at 522; *see also QVC*, 649 F. App'x at 227.  QVC alleges that adhering to the fiction of corporate separation would unjustly enrich EnvirOx and thereby "promote injustice."  That issue was not decided by the trial judge.

8.      Specifically, this Court must decide (a) whether EnvirOx was unjustly enriched as a result of its impermissible manipulation of the corporate form and (b) the need for veil piercing

to avoid the promotion of injustice.  If the Court concludes that EnvirOx was unjustly enriched, the Court must also consider "the source of such enrichment, the amount of any enrichment in relation to QVC's breach-of-contract damages, and the degree to which the unjust enrichment arises from, or is connected to, EnvirOx's [ ] abuse of the corporate form."  *QVC*, 649 F. App'x 229-30.

9.      Under Illinois law, unjust enrichment is "the receipt of money or its equivalent under circumstances that, in equity and good conscience, suggest that it ought not to be retained because it belongs to someone else."  *Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1312 (7th Cir. 1993) (*Sea-Land II*).

10.     The Court concludes that EnvirOx was unjustly enriched as a result of its improper manipulation of the corporate form.  While QVC issued payments to OurHouse under the purchase agreements for the merchandise at issue, EnvirOx endorsed and deposited all eight of QVC's checks into EnvirOx's bank account.  EnvirOx's income statements identify OurHouse revenue, including the revenue from QVC, as revenue attributable to EnvirOx.  OurHouse assets were attributed to EnvirOx, and OurHouse was sometimes marketed as a division of EnvirOx. There is no evidence that the QVC funds were transferred from EnvirOx's bank account to OurHouse's bank account.  EnvirOx's Chief Financial Officer at the time of trial, Eric Jewsbury, testified that "[i]t's possible" that the QVC funds were never transferred from EnvirOx's bank account to OurHouse's bank account and that he was "not suggesting there was a transfer of money between the two accounts."  E. Jewsbury, Tr. Vol. 2, 152: 17-25.  Furthermore, EnvirOx obtained possession of the merchandise that QVC returned for a refund and then liquidated the merchandise.

11.     The benefits derived by EnvirOx were the direct result of its relationship to OurHouse.  As a result of its manipulation of the corporate form, EnvirOx obtained and exercised control over the funds paid by QVC and identified QVC as an EnvirOx customer. Additionally, EnvirOx's possession and subsequent liquidation of the returned merchandise was a result of EnvirOx's relationship with OurHouse.  EnvirOx reaped the benefits of OurHouse's contract with QVC.  Allowing EnvirOx to retain these benefits would unjustly enrich EnvirOx as a direct result of its manipulation of the corporate form.  Piercing of the corporate veil is necessary to avoid this injustice.

12.     As the Court has concluded that EnvirOx was unjustly enriched by its receipt of the QVC funds and its improper manipulation of the corporate form, the Court now considers the amount of any unjust enrichment in relation to QVC's breach-of-contract damages.  On October 27, 2014, the trial judge entered judgment in favor of plaintiff QVC and against defendant OurHouse in the amount of $285,553.57, inclusive of pre-judgment interest and reasonable attorneys' fees and costs incurred as of that date.  Order dated October 27, 2014 (Doc. No. 56, filed October 27, 2014).  On appeal, the Third Circuit did not disturb that award.

13.     QVC now seeks to pierce the corporate veil and hold EnvirOx accountable for those damages.  QVC requests a refund of the purchase price for the returned merchandise minus any credits due, as provided in the purchase agreements between QVC and OurHouse.  The funds that QVC originally paid for the merchandise were deposited into EnvirOx's bank account. EnvirOx received the benefits of OurHouse's agreements with QVC.  A refund of the purchase price of the returned merchandise with interest is necessary to prevent the unjust enrichment of EnvirOx as a result of OurHouse's agreements with QVC and EnvirOx's improper manipulation of the corporate form.  In addition, QVC is entitled to reasonable attorneys' fees and costs under

the terms of its purchase agreements with OurHouse covering QVC's effort to pierce the corporate veil and collect the judgment from EnvirOx.  *Steiner Elec. Co. v. Maniscalco*, 51 N.E. 3d 45, 68 (Ill. App. Ct. 2016); *see also Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 759 (7th Cir. 2012) ("In Illinois, a party who prevails on a veil-piercing claim may recover their fees if the underlying contract provides for a fee award.").

14.     QVC is also entitled to pre-judgment interest from October 27, 2014, the date of the judgment issued by the trial judge, to the date of this Memorandum and Order.  The trial judge applied Pennsylvania's rate of six (6) percent annum to the calculation of pre-judgment interest in this case.  This Court agrees that rate of interest is applicable to the judgment.  *See Travelers Cas. & Sur. Co. v. Insurance Co. of North America*, 609 F.3d 143, 173-74 (3d Cir. 2010).

15.     Judgment is entered in QVC's favor and against defendant EnvirOx in the amount of $308,439.38, consisting of the judgment entered by the trial judge in the amount of $285,553.57, which included pre-judgment interest plus reasonable attorneys' fees and costs incurred prior to the appeal, and $22,885.81 in pre-judgment interest from the date of the judgment entered by the trial judge, October 27, 2014, to the date of this Memorandum and Order.

16.     Within twenty (20) days of this Memorandum and Order, QVC is granted leave to file an appropriate motion to revise the judgment to include reasonable attorneys' fees and costs incurred in connection with the appeal and remand of this matter.

An appropriate order follows.